IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MERLE E. VAN HORN, )
 )
              Plaintiff, )
 )
v. ) Civil Action No. 09-1446
 )
SUHOR INDUSTRIES, INC., )
 )
              Defendant. )

MEMORANDUM

Gary L. Lancaster,                                            May 18, 2011
Chief Judge.

       This is an employment discrimination action. Plaintiff, Merle E. Van Horn, alleges that defendant, Suhor Industries, Inc. ("Suhor") discriminated against him by discharging him due to his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Suhor has filed a motion for summary judgment arguing that Van Horn has failed to establish a prima facie case under the ADEA and that Van Horn was terminated from Suhor for inadequate job performance. For the reasons that follow, we grant this motion.

I.     FACTUAL BACKGROUND

       Unless otherwise indicated, the following material facts are undisputed. We discuss additional facts throughout the memorandum, where applicable.

The material facts not in dispute were taken, for the most part, from defendant's Concise Statement of Material Facts [Doc. No. 28] and plaintiff's response thereto. [Doc. No. 33]. Defendant's Concise Statement of Material Facts relied on Plaintiff's deposition testimony and other evidence of record.

Where plaintiff, in response to defendant's assertion of undisputed material facts, denied the facts were undisputed, he relied exclusively on the affidavit he filed with his response some six weeks after defendant's filing. The United States Supreme court has made clear, however, that "[a] party cannot create a genuine issue of fact sufficient to withstand summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts the party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Scaramuzza v. Sciolla, 2006 WL 557716, 11 (E.D.Pa.) (E.D.Pa. 2006) (citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999)). Therefore, to the extent that plaintiff simply relied on his own affidavit and that affidavit contradicted his prior sworn deposition testimony, we have concluded the fact not in dispute.

In 1997, Van Horn began working for Suhor's predecessor company in 2003. Suhor is a precast concrete manufacturer and service provider to the funeral service, building, and agriculture industries. Regis Stief was Van Horn's supervisor.

In 2003, Van Horn was 59 years old at the time and a customer service representative ("CSR"). As a CSR, Van Horn performed various tasks including, but not limited to, setting burial vaults, assisting with receiving caskets into the lowering device, lowering the caskets, sealing the vault in the presence of grieving families, and providing full graveside services. Van Horn had a good employment record at G.M. Precast and at Suhor.

Van Horn contends that he did not have any performance issues while working at Suhor. However, Suhor contends that starting in 2007, Van Horn began to experience a string of rather serious performance issues and problems, some of which resulted in requests that he no longer be assigned to set funerals at certain cemeteries. Suhor contends that Van Horn's performance issues also caused the loss of two clients. Prior to the loss of clients, Stief discussed various performance issues with Van Horn, but Van Horn was not formally disciplined.

On January 10, 2007, Glunt Funeral Home instructed Van Horn to set a vault next to the road where the immediate family would be present. Van Horn set the vault off the road and, in the process of doing so, caused damage to the cemetery ground which Suhor had to repair. The funeral director at Glunt requested that Van Horn not be assigned to his business to prepare and set vaults for funerals. While Van Horn agrees he has some fault for the incident, Van Horn contends that the funeral director made no such request to him personally. He further contends he did not cause any damage to the cemetery grounds and that the grounds were in poor condition due to winter weather when he arrived.

Likewise, on January 16, 2007, Suhor contends Van Horn failed to follow proper procedure for setting a vault at Castleview Cemetery which resulted in severe damage to the cemetery grounds causing the grieving family to postpone the burial of their loved one. The funeral director, Dan McConnell, specifically requested that the vault be sealed above ground. However, contrary to McConnell's instructions, Van Horn sealed the vault below ground. He also failed to secure the casket straps. As he was lowering the casket into the vault, with the body of the deceased inside, Van Horn's actions caused the casket to slide, shift, and then drop, causing

damage. Suhor originally sent him alone, but the following day, Suhor had to send approximately six CSRs to complete the job.

On April 13, 2007, Schmidt Funeral Home assigned Van Horn to set a grave liner, which included the set-up of full equipment. When the funeral director arrived, none of the equipment had been set and Van Horn failed to pick up the vaults as scheduled.

On February 15, 2008, Van Horn set a vault at Hall Funeral Home that became subsequently damaged. Despite being required by corporate policy to call his supervisor regarding faulty equipment, return the vault to the shop, or call for a new vault, Van Horn admitted that he instead attempted to patch the damaged piece with sealing compound. When confronted by McConnell, the funeral director for Hall Funeral Home, about the obvious damage to the vault, Van Horn claimed that the vault was damaged when it was received by Suhor, but that it would be fine after he repaired it with the sealant. McConnell stated that the vault repair was not satisfactory and called Stief to request that a new vault be brought to the gravesite. Suhor replaced the vault.

McConnell contacted Suhor's regional vice president, Greg Kelsey, to express his dissatisfaction with receiving a damaged product. He informed Kelsey that Van Horn attempted to repair a

5

damaged vault with a sealing compound. [Doc. No. 29, Ex. C]. McConnell was informed that CSRs are specifically instructed by Suhor to inspect products for damage before delivering them to the cemetery. [Id.].

McConnell's complaints prompted Kelsey to travel to the Beaver Falls facility and speak with all of the employees, including Van Horn. [Doc. No. 29, Ex. D]. At the meeting, Kelsey emphasized that if Suhor lost any customer accounts due to actions of CSRs, the employee would be terminated. [Id.].

In the "Rules of Conduct" section of the Suhor employment manual, employees are prohibited from, inter alia, "negligence or improper conduct leading to damage of employer-owned or customer-owned property". . ., "violation of personnel policies". . . and "unsatisfactory performance or conduct." [Doc. No. 29, Exhibit B.]. In addition, the manual further states that infractions of the rules of conduct "shall result in disciplinary action, up to and including discharge from the Company." [Id.] Likewise, the "Disciplinary Actions" section states:

> Although Suhor Industries, Inc. will often attempt to provide employees warnings that their conduct or job performance must be improved, in some situations Suhor Industries, Inc. may, with no warning, dismiss an employee based upon either the belief of Suhor

6

> Industries, Inc. that the seriousness of the conduct/performance justified dismissal without warning, or the belief of Suhor Industries, Inc. that a warning was not likely to remedy the problem.

[Id.]

On April 2, 2008, McConnell again called Suhor and expressed his dissatisfaction with Van Horn's services, including the damaged vault in February of 2008 and Van Horn not following his instructions by originally putting the vault below ground in April of 2007. [Doc. No. 29, Ex. C]. He informed Suhor that he was easing his business relationship with Suhor and that Hall Funeral Homes would no longer use their services. He specifically cited Van Horn's performance as the sole reason for his decision to move his business. [Id.]. Shortly thereafter, Mike Leber of Moody Funeral Home, for which McConnell is also the funeral director, ceased using defendant for its funeral services. [Doc. No. 29, Ex. D].

After McConnell's call on April 2, 2008, Stief and Kelsey believed that Van Horn had become a liability to Suhor. On April 7, 2008, Kelsey fired Van Horn. Van Horn was 64 years old. Once Van Horn was terminated, McConnell resumed business with Suhor.

Van Horn contends he was replaced by a younger CSR named "Jason" whom he trained and another younger CSR. Suhor contends that

7

a replacement was not hired and that his duties and responsibilities were distributed among the remaining CSRs.

In July, 2008, approximately three months after his termination, Van Horn contacted Jon Spies, Director of Human Resources at Suhor, and indicated that he could not afford the health insurance premium under COBRA. At that time, Spies suggested that Van Horn apply for social security benefits. Van Horn contends that Spies responses about Medicare and Medicaid led him to believe that his age was a factor in his termination. On August 8, 2008, Spies sent Van Horn a letter explaining the reasons for his termination.

II.  STANDARD OF REVIEW

The court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Factual disputes concerning issues that are irrelevant to the outcome of the case are, therefore, not considered.

Id. at 248. Factual disputes must also be "genuine" in that the evidence presented must be such "that a reasonable jury could return a verdict in favor of the non-moving party." Id.

A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990). Rather, the non-moving party must offer specific evidence found in the record that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. Id. Moreover, the non-moving party cannot "avoid summary judgment by submitting an affidavit that contradict[s] his deposition testimony without offering a satisfactory explanation for the apparent inconsistency." Bailey v United Airlines, 101 F.Supp.2d 194, 317 (3d Cir. 2002) (citations omitted). If the non-moving party does not respond in this manner, the court, when appropriate, shall grant summary judgment. Fed. R. Civ. P. 56(e).

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant

needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law.

III. DISCUSSION

Suhor contends Van Horn was fired due to a string of poor performance issues that culminated in the loss of two clients. Van Horn alleges that Suhor's claims of poor performance are a pretext for age discrimination.

The ADEA provides, "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age...." Potence v. Hazleton Area School Dist., 357 F.3d 366, 370 (3d Cir. 2004)(citing 29 U.S.C. § 623(a), et. seq.). Cases concerning alleged employment discrimination follow the burden-shifting sequence set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In order to establish a prima facie case of age discrimination, the plaintiff must produce sufficient evidence to convince a reasonable fact-finder that: (1) he is over forty, (2) is qualified for the position in question, (3) he suffered from an adverse employment action, and (4) that his replacement was sufficiently younger to permit a reasonable inference of age discrimination. Potence, 357 F.3d at 370 (citing Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001)).

If a plaintiff does establish a prima facie case, then the burden of production shifts to the defendant to show that there was a nondiscriminatory reason for the adverse employment decision. If the defendant does so, the plaintiff must submit evidence from which

a fact-finder could reasonably either: (1) disbelieve the employer's articulated reasons, or (2) believe that invidious discrimination was more likely the determinative cause of the employer's action. Id. (citing Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000)); McNulty v. Citadel Broadcasting Co., 58 Fed. Appx. 556, 565 (3d Cir. 2003).

In the present case, Van Horn has established that he was well within the protected class when he was terminated, was qualified for the position, and that he suffered an adverse employment action when he was terminated in April of 2008. However, Suhor argues that Van Horn has not proven that he was replaced by younger workers. Van Horn's only proof on this element is his own affidavit in which he states that he was replaced by a younger employee named "Jason" and another younger CSR. [Doc. No. 32, Exhibit A; Doc No. 33, ¶ 47]. Van Horn has not provided the full name of these persons, nor any other evidence regarding the employees' identification or job duties.

Although this evidence may, in fact, be insufficient to carry Van Horn's burden to prove a prima facie case, we will presume Van Horn has established a prima facie case for purposes of this motion.

Suhor has provided a valid nondiscriminatory reason for Van Horn's termination. As previously stated, according to Suhor, Van Horn was fired due to a string of poor performance issues that culminated in the loss of two clients. Van Horn alleges that Suhor's claims of poor performance are a pretext for age discrimination.

First, Van Horn contends he performed well, had no prior performance problems, and was never progressively disciplined. In fact, Van Horn asserts that McConnell told him that he was unhappy with Suhor because of its increased prices, the poor quality of vaults from New York, and the attitude of the Plant manager, Regis Stief.

However, this is summary judgment time, and the plaintiff has provided no evidence to defeat summary judgment on the stand-alone basis required by law. Van Horn has not provided any evidence to corroborate contentions of his own satisfactory performance or Suhor's alleged deficiencies. He has not provided business records, personnel records, interrogatories, requests for admission, deposition testimony, for example, or any other substantive evidence to support his allegations. Plaintiff provides no excuse for his failure to obtain this evidence, and there is nothing to suggest that Suhor actually purposefully withheld this information from him.

Suhor, conversely, brings forth portions of Van Horn's own deposition testimony that contradict facts stated in Van Horn's sworn affidavit regarding his satisfactory performance. In his testimony, he admits that he was at least partially at fault for the performance issues stated by the defendant. [Doc. No. 29, Ex. B; Doc. No. 34, Ex. F].

Further, the case law is clear that a court may not question a defendant's business judgment in choosing termination in response to a plaintiff's inappropriate behavior. <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 332 (3d Cir. 1995). McConnell stated in his own sworn affidavit that "[he] specifically explained to Suhor Industries, Inc. that the sole reason for [his] decision to remove [his] business was because of the issues relating to Van Horn's performance." [Doc. No. 29, Ex. C]. It is undisputed that Kelsey informed all the CSRs that they will be terminated if they lost accounts or business. Once McConnell indicated his reason for discontinuing his business with Suhor, the evidence indicates that Kelsey and Stief fired Van Horn in accordance with the "Disciplinary Actions" section of the employment manual. They indicate in their sworn affidavits that they felt that Van Horn had "become a liability

14

to the company" and that a further warning was not going to remedy the loss of customer accounts. [Doc. No. 29, Exs. A and D].

Van Horn only brings forth an uncorroborated statement that McConnell discontinued his business with Suhor due to high prices and faulty products. However, such a statement is not sufficient to rebut McConnell's sworn statement to the contrary.

Van Horn contends that he performed his own informal investigation and that directors of other funeral homes denied they were aware of complaints about his performance. He also contends that he was not provided a written termination notice or any documents evidencing prior discipline or complaints, even after he requested them.

Such denials by other funeral homes, however, do not contradict the undisputed evidence that Van Horn caused the loss of two clients.[1] Further, despite his contention, Van Horn has not provided any substantive evidence to corroborate these accounts of his informal investigation. Van Horn also admits that Suhor informed Van Horn on more than one occasion of issues with his performance. [Doc. No. 34, Ex. F]. Spies, the Director of Human Resources at Suhor, also sent Van Horn a termination letter from Suhor in August, 2008 detailing his infractions. [Id.].

Van Horn contends he was not disciplined under Suhor's progressive discipline policy. He asserts that other employees, Tony Leavens, Nick Wright, Dave Erickson, and Ed Stowers, who were younger than him, also violated company policies and were either not disciplined or were progressively disciplined. Van Horn has not

---

1 In considering whether stray remarks, such as the performance assessments made by unidentified funeral directors after Van Horn had been terminated, are probative of discrimination on the part of Suhor, the Court of Appeals for the Third Circuit requires that courts consider the following factors: "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." Parker v. Verizon Pennsylvania, Inc., 309 Fed. Appx. 551, 558-559(3d Cir. 2009) (citations omitted). "Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Id. (citing Fuentes v. Perskie, 32 F.3d 759,767 (3d Cir. 1994) (citations omitted)).

provided any substantive evidence such as the personnel files or deposition testimony of Tony Leavens, Nick Wright, Dave Erickson, and Ed Stowers. In his deposition testimony, Van Horn acknowledged that none of the aforementioned CSRs committed the same infractions as he did, such as the loss of two accounts. [Doc. No. 29, Ex. B; Doc. No. 34, Ex. F]. Van Horn further admits he knew he was an at-will employee[2] and that he was aware that any such progressive discipline policy was permissive and not mandatory. [Id.]

Finally, Van Horn contends that Spies' responses about Medicare and social security benefits prove that poor performance was pretext for age discrimination. However, the communication regarding Medicare and social security benefits occurred three months after Van Horn's termination. Spies testified in his affidavit that he wanted to apprise Van Horn of all the health insurance coverage for which he was eligible and that he would have done the same for an employee of any age. [Doc No. 29, Ex. E].

---

2 "Absent a clear intent to the contrary, all employment relationships in Pennsylvania are considered employment-at-will, meaning that an employer can discharge an employee at any time for any reason." Erdman v. Nationwide Ins. Co., 510 F.Supp.2d 363, 375-76 (M.D. Pa.2007). As courts have emphasized, in Pennsylvania "there is a very strong presumption of at-will employment relationships and the level of proof required to overcome this presumption is arduous." Violanti v. Emery Worldwide A-CF Co., 847 F.Supp. 1251, 1258 (M.D. Pa. 1994).

Thus, no reasonable jury could draw an inference of discriminatory animus based upon Spies informing Van Horn about various options for health insurance coverage after he was terminated.

As such, Van Horn has failed to produce sufficient evidence to rebut Suhor's legitimate, nondiscriminatory business reason for his termination.

IV.     CONCLUSION

Pursuant to the aforementioned reasons, Van Horn has failed to offer proof that would make the court disbelieve Suhor's articulated reasons for his termination. We will grant Suhor's motion for summary judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MERLE E. VAN HORN, )
)
        Plaintiff, )
)
v. ) Civil Action No. 09-1446
)
SUHOR INDUSTRIES, INC., )
)
        Defendant. )

ORDER

AND NOW, this 18th day of May, 2011, upon consideration of defendant's motion for summary judgment [Doc. No. 26], and plaintiff's response thereto [Doc. No. 32], for the reasons stated in the accompanying memorandum, IT IS HEREBY ORDERED THAT defendant's motion for summary judgment is GRANTED. Defendant's motion to strike plaintiff's pretrial statement [Doc No. 39] is DENIED as moot, defendant's first, second, and third motions in limine [Doc. Nos. 46, 47, 48] are DENIED as moot, and defendant's motion to strike plaintiff's amended pretrial narrative statement and untimely responses to Motions in Limine is DENIED as moot.

BY THE COURT:

/s/ _____ C.J.

cc: All counsel of record